UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**SUSAN MAE SHAFFER,**

    **Plaintiff,**

v.                                                                                                    Case No: 5:14-cv-224-Oc-PRL

**COMMISSIONER OF SOCIAL SECURITY**

    **Defendant.**

## ORDER

Plaintiff appeals the administrative decision denying her application for Disability Insurance Benefits ("DIB"). She contends that the ALJ failed to properly evaluate the medical evidence. I agree. Thus, upon a review of the record, the memoranda, and the applicable law, the Commissioner's decision is due to be **REVERSED and REMANDED**.

**I.    BACKGROUND**

On August 3, 2010, Plaintiff filed an application for DIB (Tr. 140–43),[1] alleging her disability onset date was January 5, 2009 (Tr. 140).[2] The Social Security Administration ("SSA") denied her application initially (Tr. 84–87) and upon reconsideration (Tr. 91–92). Upon

---

[1] The record includes only the application summaries, Plaintiff's actual application is not included.

[2] The parties disagree over the alleged onset date and the record contains three possible dates. As stated above, Plaintiff alleges an onset date of January 5, 2009, but the DIB Insured Status Report (Tr. 144) and the Social Security Field Office Report (Tr. 176) both state an onset date of October 15, 2009. The ALJ stated an onset date of January 15, 2009 at the hearing. (Tr. 50). The Government argues that because "Plaintiff did not appeal the December 23, 2009 denial of her prior DIB application, which made that denial final and binding for the period through the date of that determination," Plaintiff's onset date is not January 5, 2009. (Government's Br. at 7). On remand, the ALJ may clarify the proper onset date if necessary.

Plaintiff's request a hearing before Administrative Law Judge ("ALJ") Robert D. Marcinkowski was held on March 14, 2012. The ALJ later issued an unfavorable decision. (Tr. 12–32).

At step one, the ALJ found that though Plaintiff engaged in substantial gainful activity "from June 2011 to November 2011 . . . this work constituted an unsuccessful work attempt because it did not exceed 6 months." (Tr. 17). At step two, the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia syndrome; an affective disorder; a post-traumatic stress disorder (PTSD); and a history of substance use disorders. (Tr. 18).

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20–22). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b), with additional limitations. The claimant can lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. The claimant can frequently balance or stoop, as well as occasionally kneel, crouch, crawl, or climb a ramp or stairs, but never climb a ladder, rope, or scaffold. The claimant has to avoid concentrated exposure to vibration, as well as concentrated exposure to hazards such as machinery and heights. Additionally, the claimant can understand, remember, and carry out only simple instructions, as well as perform only simple, routine tasks.

(Tr. 22).

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 28–29). At step five, however, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (Tr. 29–30). Thus, the ALJ found that Plaintiff was not disabled from October 15, 2009, through the date of the decision. (Tr. 31).

On February 20, 2014, the Appeals Council denied Plaintiff's Request for Review, making the hearing decision the final decision of the Commissioner. (Tr. 4–9). With her administrative remedies exhausted, Plaintiff timely filed the instant appeal. (Doc. 1).

## II. STANDARD OF REVIEW

A claimant is entitled to disability benefits when claimant is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401; *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by

substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

Nevertheless, "[t]he Secretary's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## III.  DISCUSSION

Plaintiff raises two arguments on appeal: (1) the ALJ failed to apply the correct legal standards to the medical opinions of record and (2) the ALJ failed to apply the correct legal standards to Ms. Shaffer's testimony. (Doc. 15). I agree that the ALJ committed reversible error by failing to state with particularity the weight given to three psychological opinions. Because remand is required on the first issue in this case, it is unnecessary to review Plaintiff's second argument. *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986).

The law is by now clear that an "ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); *see also McClurkin v. Soc. Sec. Admin.*, No. 14-15425, 2015 WL 5166045, at *2 (11th Cir. Sept. 4, 2015) (noting that "it is clear from our decision in *Winschel* that the explanation requirement applies equally to the opinions of treating physicians and non-treating physicians.").

Here, the Plaintiff complains that the ALJ failed not only to weigh or explain the opinion of Dr. Poetter, related to her inability to function socially, but that he entirely failed to consider

Dr. Poetter's medical assessment at all. Further, although the ALJ discussed portions of Dr. Suich's examination, he failed to offer any weight to the opinion, even though Dr. Suich opinioned that the Plaintiff was limited in her social functioning. Lastly, while the ALJ did mention Drs. Austin and Roman's joint opinion, where they opined Plaintiff has social functioning limitations, the ALJ again failed to state what weight he accorded that opinion.

First, and more specifically, Dr. Poetter, at the request of Vocational Rehabilitation Services, conducted a *Psychological Evaluation* on March 27, 2009, and opined that Plaintiff would be "best suited for working with 'things' rather than directly with 'people.'"[3] (Tr. 281–82). Dr. Poetter further opined that Plaintiff has a "severe underlying depressive disorder," which is likely a chronic problem, and that she requires "long-term mental health treatment." (Tr. 280–82). Yet, the ALJ found, regarding Plaintiff's mental limitations, that Plaintiff "can understand, remember, and carry out only simple instructions, as well as perform only simple, routine tasks" without placing any social functioning limitations in the RFC. (Tr. 22). Dr. Poetter's opinion, along the opinions outlined below, however, suggest that Plaintiff has ongoing and persistent social functioning limitations.

Indeed, about a year and a half after Dr. Poetter examined Plaintiff, Dr. Suich performed a *General Clinical Evaluation with Mental Status* and he opined that "the symptoms based on client report *and clinical observations* appear to be severely impacting . . . interpersonal interactions" and that Plaintiff's "social problem-solving was moderately impaired as evidenced by a limited understanding of . . . social interactions." (Tr. 317) (emphasis added). Plaintiff correctly notes that the ALJ "completely ignored Dr. Suich's opinion that her "symptoms . . . appear to be severely

---

[3] As noted above (*supra* n. 2), Plaintiff's onset date is unclear, but the complete omission of Dr. Poetter's opinion from the decision is erroneous in this case given the later corroborating opinions and given the three year period between Dr. Poetter's opinion and the opinion of Drs. Austin and Roman, which continue to show social function limitations.

impacting . . . interpersonal interactions" and that the ALJ failed to state what weight he accorded the opinion.  (Plaintiff's Br. at 21).

Finally, one month after the March 14, 2012 hearing,[4] and approximately three years after Dr. Poetter's findings related to Plaintiff's social limitations, consultative doctors Austin and Roman together performed a *Disability Evaluation* and jointly opined that Plaintiff's social functional ability is questionable and poor.  (Tr. 412).  The ALJ's summary of the *Disability Evaluation* does mention their findings that Plaintiff has "poor social functioning [and] a questionable functional ability" (Tr. 28); but, the ALJ's decision lacks any explanation of what the ALJ decided about their findings that Plaintiff has social functioning limitations and the decision also lacks what weight the ALJ accorded the opinion.  And, as noted above, the RFC does not account for these limitations.

Further, Plaintiff argues that the ALJ erred in his finding that Dr. Roman's opinion contained in the *Medical Source Statement of Ability to Do Work-Related Activities (Mental)* was not entitled to controlling weight.  (Tr. 407–09).  There Dr. Roman found that Plaintiff is markedly impaired in her ability to interact with the public, with supervisors, and with co-workers.  (Tr. 408).  The ALJ stated that Dr. Roman's opinion was "inconsistent with the evidence as a whole."  (Tr. 27).  However, Dr. Roman's opinion appears to be consistent with the opinions of Dr. Poetter and Dr. Suich, as well as the joint opinions of Doctors Roman and Austin.

While the failure to explain the weight accorded medical opinions may be harmless error where the opinions do not *directly contradict* the ALJ's findings, this is not the case here.  *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005).  In fact, several opinions by consulting

---

[4] The ALJ ordered post-hearing consultative psychological evaluations "because [the ALJ found] that the record is insufficient in medical information."  (Tr. 71–72).

medical doctors suggest social limitations, contrary to the ALJ's exclusion of any such limitations in the RFC, and, importantly, without any explanation for such an exclusion.

Because the ALJ failed to discuss, at step four, these potential social limitations (or include them in the RFC assessment), it is unclear whether he properly evaluated the opinions. I am, therefore, unable to determine "with at least some measure of clarity the grounds for [the ALJ's] decision" about Plaintiff's social limitations. *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984). It is, of course, possible that the ALJ considered and rejected these medical opinions, but without stating any (or adequate) grounds for his rejection, I cannot determine whether the ALJ's conclusion is "rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179. Any further effort to make this determination, in the absence of any effort to do so by the ALJ, would require me to improperly re-weigh the evidence and make factual findings. *See, e.g.*, *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (noting that the reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner") (quoting *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983) (brackets omitted)).

For these reasons, the ALJ's consideration of the medical evidence and his RFC assessment is not supported by substantial evidence. Accordingly, reversal is required.

**IV.    CONCLUSION**

The ALJ'S decision is **REVERSED** pursuant to 42 U.S.C. § 405(g) and **REMANDED** for further proceedings consistent with this Order.

**DONE and ORDERED** in Ocala, Florida on September 23, 2015.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties